# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| **RONALD EUGENE WEEMS**, | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| v. | ) CIVIL ACTION NO. |
| | ) 3:11-CV-03083-KOB |
| | ) |
| **MICHAEL J. ASTRUE**, | ) |
| **Commissioner of the Social**, | ) |
| **Security Administration** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

## I. INTRODUCTION

On August 3, 2009, the claimant, Ronald Weems, filed an application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. The claimant alleged disability commencing on February 16, 2009, because of rheumatoid arthritis, polyarthropatries, and bipolar disorder. (R. 142, 150). The Commissioner denied the claim, and the claimant filed a timely request for a hearing before an Administrative Law Judge, which the ALJ held on December 28, 2010. In a decision dated February 23, 2011, the ALJ found the claimant not disabled as defined by the Social Security Act and, thus, ineligible for disability insurance benefits or supplemental security income. On June 23, 2011, the Appeals Council refused to grant review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 1-3, 9, 12-25, 97, 193). The claimant has exhausted his administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3). For the reasons stated below, this court affirms the decision of the Commissioner.

1

## II. ISSUES PRESENTED

I. Whether the ALJ properly accorded more weight to non-examining state physicians than to Dr. Brad Ginevan, a treating physician and Linda Livingston, a treating nurse practitioner.
II. Whether the ALJ properly applied the Eleventh Circuit's three-part pain standard.
III. Whether the ALJ properly incorporated the PRTF's mode of analysis into his decision.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996,999 (11th Cir. 1987). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 401 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence that conflicts with the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986). The court must scrutinize the totality of the record "to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## IV. LEGAL STANDARDS

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to "engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." To make this determination the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[1]

To establish disability, the claimant has the burden of proving the first three steps: namely that (1) she is not engaged in substantial gainful activity; (2) she has a severe impairment or combination of impairments; and (3) her impairment or impairments meet or exceed the criteria in the Listings found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant cannot prove that she has a listed impairment, she must prove alternatively that she is unable to perform her previous work. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *see also Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990). Once the claimant shows that she cannot perform her previous work, the burden shifts to the Commissioner "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Jones v. Apfel*,

---

[1] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) was a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. Unit A 1981).

190 F.3d at 1228.

As a general rule, the opinion of an examining physician is usually entitled to more weight than the opinion of a non-examining physician. *Broughton v. Heckler*, 776F.2d 960, 961-62 (11th Cir. 1985). However, in evaluating physician's opinions, "the [ALJ] may reject any medical opinion," including that of a treating and consulting physician, "if the evidence supports such a contrary finding." *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). However, the ALJ must articulate specific reasons for rejecting the treating or examining physician's opinion. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

In evaluating pain and other subjective complaints, the Commissioner must consider whether the claimant demonstrated an underlying medical condition, and *either* "(1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1225-56 (11th Cir. 2002); 20 C.F.R. § 404.1529.

When evaluating mental impairments, an ALJ must use the special technique dictated by the Psychiatric Review Technique Form (PRTF). 20 C.F.R. § 404.1520a(a). This technique requires evaluating four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3-4). When faced with a claim of mental impairment, an ALJ must complete and append a PRTF to his decision or "incorporate its mode of analysis into his findings and conclusions. Failure to do so requires remand." *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th

Cir. 2005); *see also* 20 C.F.R. § 404.1520a(e)(2).

## V. FACTS

The claimant has a high school education and was thirty-two years old at the time of the hearing. His past work experience includes employment as a polish hand, millwright helper, and order puller. The claimant's alleged disabilities stem from rheumatoid fever and bipolar disorder. (R. 19, 38, 169).

*Physical Limitations*

On June 6, 2004, Shoals Radiology Associates conducted an X-ray on the claimant that showed a large left paramedian disc herniation at L5-S1 impinging on the claimant's exiting left fifth nerve root. (R. 229). On June 28, 2004, the claimant visited Dr. Jerry Adderholt, a treating neurosurgeon, who diagnosed the claimant with a herniated disc. Dr. Adderholt recommended and scheduled surgery. On July 7, 2004, Dr. Jerry Adderholt conducted surgery on the claimant at Eliza Coffee Memorial Hospital, which corrected the claimant's disc herniation. On August 4, 2004, the claimant visited Dr. Adderholt, who noted that the claimant was healing well from surgery. On September 15, 2004, the claimant had a follow-up visit with Dr. Adderholt. At that time, the claimant had no back pain, and the surgically induced fusion of vertebrae was progressing well.  (R. 237-40, 243).

After no specific inciting event, the claimant visited Dr. Adderholt on November 30, 2005 for lower back, right hip, and leg pain. The examination showed no abnormalities or negative test results, and Dr. Adderholt saw nothing he could remedy with surgery; Dr. Adderholt recommended home exercise and anti-inflammatories. On January 21, 2008, the claimant again visited Dr. Adderholt for lower back pain. Dr. Adderholt order new imaging of the claimant's

back, which showed solid surgically induced fusion and some mild degenerative changes. (R. 231, 233-34, 236).

On January 14, 2008, the claimant visited Dr. Linda Clemons, a treating physician. Dr. Clemons diagnosed the claimant with palpitations, rheumatoid arthritis, and degenerative disc disease. (R. 288-91). The claimant visited Dr. Clemons four more times, each time exhibiting rheumatoid arthritis, palpitations, and degenerative disc disease: March 3, 2008; April 16, 2008; May 22, 2008; and June 3, 2008. On the April 12, 2008 visit, Dr. Clemons performed an in-office venipuncture, which showed low testosterone levels. The June 3, 2008 report showed a plan to conduct a bone scan. (R. 273-86).

From June 1, 2009 to August 25, 2009, the claimant visited Dr. Brad Ginevan, a treating physician, five times, where he exhibited bipolar disorder, joint pain, and rheumatic heart disease each time: June 1, 2009; July 1, 2009; July 29, 2009; August 18, 2009; August 25, 2009. On June 1, 2009, Dr. Ginevan performed an X-ray that showed normal knees, hips, and heart and a post operative plate from the disc surgery conducted by Dr. Adderholt. Additionally, at the request of the claimant, Dr. Ginevan wrote a letter dated August 11, 2009 and addressed "to whom it may concern" that indicated the claimant was "unable to maintain any gainful employment." Dr. Ginevan did not attach any records to the letter, nor did he cite to any treatment records; rather, Dr. Ginevan listed the following maladies: arthritic condition; irregular heart beat; rheumatic fever; and bipolar disorder. After this listing, Dr. Ginevan made the above mentioned conclusion that the claimant could not work. (R. 352-94, 514).

From October 22, 2009 to November 29, 2010, the claimant saw Dr. Ginevan twelve times, each time complaining of joint pain: October 22, 2009; December 9, 2009; February 19,

2010; April 26, 2009; May 27, 2010; June 24, 2010; July 23, 2010; August 24, 2010; October 1, 2010; October 28, 2010; November 15, 2010; and November 29, 2010. For each visit in 2010, Linda Livingston, CRNP, edited the report, indicating that she examined the claimant. Additionally, on December 13, 2010 Livingston completed a Clinical Assessment of Pain (CAP) regarding the claimant. (R. 428-508).

In the CAP, Livingston indicated that the claimant's pain would be too distracting to adequately perform daily work activities. She indicated that physical activity, such as walking, standing, bending, and stooping, greatly increase the claimant's pain. The CAP indicated that the claimant's conditions would compromise his ability to sustain work activity on a regular basis and would cause approximately forty-eight days of absences in a 250 day work year. Livingston indicated that the claimant's condition could reasonably produce the pain of which the claimant complained. Lastly, Livingston marked that the claimant experienced pain, as indicated in her assessment, on the alleged onset date of disability. (R. 507-08).

Livingston also completed an arthritis RFC questionnaire. In the questionnaire, Livingston indicated that the claimant's impairments were not reasonably consistent with the symptoms described stating, "[a]ll testing has been normal, [sic] pain is a subjective symptom." Livingston stated that the claimant could possibly be a malingerer and that the claimant was capable of low stress jobs. Livingston marked that the claimant would have significant limitations doing repetitive handling or reaching. Livingston indicated that the claimant could grasp or turn objects with his hands for ten percent of a work day; make fine manipulations with his fingers for ten percent of the work day; and reach with his arms, including overhead, for fifteen percent of the work day. (R. 509-13).

*Mental Limitations*

From November 3, 2006 to May 5, 2009, the claimant visited Dr. Georgie Stanford, a treating psychiatrist, at Riverbend Center for Mental Health ten times: November 3, 2006; December 1, 2006; March 28, 2008; June 2, 2008; September 5, 2008; October 14, 2008; October 23, 2008; January 12, 2009; March 9, 2009; and May 5, 2009. (R. 300-22). Each time the claimant exhibited bipolar disorder, euthymic mood, and a history of manic depression. On January 28, 2008, Riverbend Center for Mental Health completed a report that showed that the claimant's speech, emotions, thought process, and thought content were within normal limits. The report showed that the claimant was fidgeting, shaking his leg, and losing weight. The report indicated two mental health visits for which no reports exist in the record: a 2005 outpatient treatment at Riverbend Center for Mental Health relating to bipolar disorder and a 2003 outpatient treatment from Dr. Mumford, a psychiatrist, relating to bipolar disorder. Lastly, the report showed a diagnoses of Bipolar I Disorder Unspecified and a Global Assessment of Functioning (GAF) score of fifty-five. (R. 251-62).

On March 3, 2008, the claimant received a psychiatric evaluation from Dr. Stanford. (R. 264-271). The evaluation showed a diagnoses of bipolar disorder and a GAF score of fifty-five. (R. 266). Dr. Stanford prescribed Lexapro and Lamictal. (R. 266). From November 3, 2006 to March 28, 2008, the claimant's GAF score remained fifty-five; from June 2, 2008 to May 5 2009 his GAF increased to and stabilized at sixty-five. (R. 300-22).

On June 4, 2008, the claimant visited Dr. Joseph Cuccia on referral from Dr. Clemons. (R. 293). The claimant complained of memory loss and spacing out; Dr. Cuccia determined those complaints could be caused by the claimant's bipolar disorder or sleep apnea. (R. 294). Dr.

8

Cuccia found that claimant's spacing out could also be complex partial seizures; accordingly, Dr. Cuccia ordered an MRI, EEG, and a follow-up appointment. (R. 295). On June 13, 2008, the claimant had an MRI at Helen Keller Hospital that showed no abnormalities in the claimant's brain. (R. 296).

*The ALJ Hearing*

After a denial of the claimant's request for disability insurance benefits by the Commissioner, the claimant received a hearing before the ALJ on December 28, 2010. (R. 32, 142, 150).

The claimant stated he suffers from arthritis and has difficulty sitting, standing or walking for long periods of time. The claimant testified to significant pain in his hands that worsens with extended use; however, after a fifteen to twenty minute rest, his hands function properly again. The claimant stated that arthritis affects his knees, hips, shoulders, ankles, and back; that increased activity worsens his arthritis; that techniques he learned from physical therapy lessen his pain; and that since applying for disability in February 2008, his pain has worsened. (R. 39-41).

The claimant testified that while he visits Dr. Ginevan, Linda Livingston, a nurse practitioner, adjusts his pain medications. The claimant testified that three or four days out of the week, he must lie down for an hour or more to relieve his pain; that three or four times each night, he wakes up for ten to fifteen minutes because of his pain; and that he can clean his clothes but does not vacuum or mop because the activity causes him too much pain. The claimant testified that he avoids walking "at all costs" for fear of pain that originates in his hips and knees then radiates out to his back and ankles when he walks. Moreover, claimant testified that even if

9

he were allowed to sit and stand as he pleased while using his hands for fine manipulations, such as putting nuts on bolts, he would be unable to do so given his pain. (R. 41-43).

The claimant testified that he has a significant memory problem but acknowledged that his medical record does not reflect that ailment. (R. 43). Claimant testified that he can no longer play computer games but continues playing table-top role-playing games. Claimant testified that his weight fluctuates stating that depression, stress, and jaw pain affect his desire to eat. Claimant testified that he had surgery in 2004 to correct a herniated disc and surgery in 2008 to correct heart palpitations. Claimant testified that while the heart surgery was successful, he still has palpitations and breathing problems. However, claimant stated he no longer needs to take medication for his palpitations. Claimant testified that Livingston prescribed him Symbicort for chronic obstructive pulmonary disease; claimant referred to Livingston as his doctor, though Livingston is a nurse practitioner. (R. 46-50).

The ALJ next questioned Thomas Elliott, a vocational expert. Mr. Elliott testified that the claimant had previously worked as a polish hand, millwright helper, and order puller. The ALJ asked Mr. Elliott if an individual with the claimant's age, education, and skill level who also had the ability to perform light work could perform the claimant's past relevant work. Mr. Elliott testified that such an individual could not perform the claimant's past relevant work but could work as an inspector, hand packer, or an assembler of small products and hardware. (R. 51-54).

The ALJ next asked Mr. Elliott to take the previous hypothetical restrictions and further limit them from light work to sedentary work. Mr. Elliott testified that with those restrictions, the hypothetical individual could work as a final assembler, assembler of buttons and notions, or bench hand. The ALJ next asked Mr. Elliott to assume that the hypothetical individual would

have to take breaks as described in the claimant's testimony. Mr. Elliott testified that such a person could not maintain gainful employment. The ALJ asked Mr. Elliott to assume that the individual would have to miss work as often as the claimant testified he would need. Mr. Elliott testified that such an individual could not maintain gainful employment. The ALJ asked Mr. Elliott to assume that the individual could not use his hands without pain as the claimant testified. Mr. Elliott testified that such an individual could not maintain gainful employment as an unskilled laborer. The claimant's counsel asked Mr. Elliott what effect a limitation of only occasional use of the hands would have on someone seeking unskilled employment. Mr. Elliott testified that such a limitation would preclude such an individual from gainful employment. (R. 54-57).

*The ALJ's Decision*

In his decision, the ALJ found that the claimant met the insured status requirements of the Social Security Act through December 31, 2010. The ALJ found that the claimant had not engaged in substantial gainful activity since the alleged onset of disability, February 16, 2008, and that the claimant had the following severe impairments: bipolar disorder; status-post lumbar fusion; and polyarthropathy. To support his conclusion regarding the claimant's severe impairments, the ALJ cited to a number of the claimant's medical records. (R. 15-16).

The ALJ cited records from Dr. Stanford of Riverbend Center for Mental Health as proof of the claimant's bipolar disorder. To show status-post lumbar fusion, the ALJ cited the following reports and documents from Dr. Adderholt: surgery records; follow-up records; X-Rays; and treatment recommendations for anti-inflammatory medication and home exercise. Additionally, the ALJ cited Dr. Clemon's records indicating repeat visits by the claimant for back

pain. The ALJ addressed the claimant's assertion of memory loss by citing to Dr. Cuccia, who found no abnormalities; ordered an MRI that was negative; and determined that the memory loss was possibly multi-factorial and likely based on the claimant's bipolar disorder. To support finding polyarthropathies as a severe impairment of the claimant, the ALJ cited Dr. Ginevan's records that indicate that the claimant saw Dr. Ginevan periodically for joint pain and arthritis.(R. 15-16).

The ALJ next found that the claimant did not have an impairment that met the listings. For physical impairments, the ALJ found that the claimant's back injury did not meet the Listings because the claimant did not have nerve root compression or motor loss. For mental impairments, the ALJ considered whether paragraph B criteria of Listing 12.04 were met. The ALJ stated that to satisfy paragraph B, a mental impairment must result in at least two of the following: marked limitations of activities of daily living; marked limitations in maintain social functioning; marked limitations in maintaining concentration, persistence, or pace; or repeated episodes of decompensation each of extended duration. The ALJ found that the claimant had mild limitations in activities of daily living; moderate limitations in social functioning; moderate limitations in concentration, persistence, or pace; and no episodes of decompensation. To support his conclusions regarding mental impairments, the ALJ cited the claimant's GAF of fifty-five and sixty-five and an assessment by a non-examining state agency physician. (R. 16-17).

The ALJ found that the claimant had the residual functioning capacity to perform light work. To support his conclusion, the ALJ applied the three part pain standard regarding the claimant's subjective allegations of pain. The ALJ first stated that the claimant testified that he could not work because of chronic arthritic pain affecting his hands, knees, hips, back, shoulders,

and ankles. The ALJ determined that the claimant's allegations were not fully credible as they were not supported by objective medical evidence. To that end, the ALJ stated that Dr. Cuccia's records indicate that the claimant had no problems with motor functions, sensation, coordination, gait, or reflexes and that the laboratory testing conducted by Dr. Cuccia showed no abnormalities. (R. 18).

In his residual functioning assessment, the ALJ gave little weight to the pain questionnaire and opinion evidence given by Livingston. To justify affording little weight, the ALJ stated that the questionnaire noted that all objective testing had been normal, and Livingston, as a nurse practitioner, was not a treating source. Additionally, the ALJ stated that the opinions found within the questionnaire were based on the claimant's subjective claims of pain and inconsistent with the objective findings in the medical record. The ALJ also gave little weight to Dr. Ginevan's opinion evidence found within his letter written on behalf of the claimant. To support affording little weight, the ALJ cited the lack of objective findings attached to the letter itself and the inconsistency between the record and the opinion in the letter. To show that inconsistency, the ALJ cited that the record indicated that the claimant had chronic subjective pain complaints, without objective findings and with normal indicators of functioning ability. Lastly, the ALJ stated that he gave the greatest weight to the assessments by the non-examining state agency physicians that stated the claimant was capable of a limited to full range of light work. The ALJ gave these opinions the greatest weight because they were reasonably consistent with the medical evidence as they found no objective basis to limit the claimant's functioning capacity so severely as to preclude him from working. (R. 18-19).

The ALJ next found that the claimant was unable to perform any past relevant work; was

a younger individual on the alleged onset of disability; has a high school education; and has acquired no transferable work skills from past relevant work. The ALJ determined that jobs in significant numbers exist in the national economy that the claimant can perform, such as hand packer, small product assembler, hardware assembler, final assembler, buttons and notions assembler, and bench hand. Ultimately, the ALJ found that the claimant was not disabled as defined by the Social Security Act. (R. 20).

## VI. DISCUSSION

The claimant did not file a brief in this matter. The Commissioner impliedly argues that the claimant waived his ability to raise issues before this court by not filing a brief. To support his contention, the Commissioner cites *Scott v. Comm'r of Soc. Sec.*, 440 Fed. Appx. 726 (11th Cir. 2011) and *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570 (11th Cir. 1989). In *Scott*, the Eleventh Circuit held that parties waive issues that they do not argue on the merits in their brief. *Scott*, 440 Fed. Appx. at 728. However, this holding applies to briefs filed in the federal *circuit* court, not briefs filed in the federal *district* court. *Scott* makes this limited application clear by citing to both *Greenbriar*—specifically referencing initial and reply briefs filed in the circuit court—and Federal Rule of Appellate Procedure 28(a)5—requiring appellant's briefs to contain a statement of the issues presented for appeal. *Greenbriar*, 881 F.2d at 1573 n. 6; Fed. R. App. P. 28(a)5; *see also Outlaw v. Barnhart*, 197 Fed. Appx. 825, 828 n.3 (11th Cir. 2006) (holding that a claimant who lists an issue in their appellate brief without further elaboration or citation to authority waives the issue).

The Eleventh Circuit has not addressed whether a social security disability claimant must file a brief with his original complaint in the district court nor has the circuit determined the

specific consequences of a claimant not filing a brief with the district court. The federal districts differ in their approach to complaints unaccompanied by briefs. The Southern District of Georgia has held the non-filing of a brief in a social security case a complete waiver of claims. *See Walton v. Astrue*, 2010 U.S. Dist. LEXIS 11515, *5 n.3 (S.D. Ga. 2010). The District of South Carolina has dismissed complaints unaccompanied by briefs for failure to prosecute. *See Messer v. Comm'r of SSA*, 2011 U.S. Dist. LEXIS 152525 (D. S.C. 2011); *but see Shaw v. Comm'r of Soc. Sec.*, 1998 U.S. Dist. LEXIS 18414, *5 (N.D.N.Y. 1998) (holding that dismissing a claimant's complaint for not filing a brief too harsh).

However, the majority of districts, including the Northern District of Alabama, have reviewed the record to determine whether the ALJ properly applied legal standards and supported his factual conclusions with substantial evidence, despite the claimant not filing a brief. *See, e.g., Mitchell v. Apfel*, 1999 U.S. Dist. LEXIS 17549 (N.D. Ala. 1999); *see also Beckstrom v. Astrue*, 2011 U.S. Dist. LEXIS 38224, *6 (D. Az. 2011) (finding the filing of briefs unnecessary in social security disability complaints). Moreover, the notice to parties issued by the clerk of this court upon receipt of social security disability benefits pleadings states that the court does not require briefs. Thus, failing to file a brief is neither fatal nor a waiver of claims or review.

Having determined that the claimant's non-filing does not restrict review, this court will review the record to determine whether the ALJ properly applied legal standards and supported his factual findings with substantial evidence. The commissioner argues that the ALJ (1) properly weighed medical opinion evidence; (2) dismissed the claimant's subjective pain testimony; and (3) addressed the claimant's allegations of mental impairments. For the reasons stated below, this court agrees, finding that the ALJ properly applied legal standards and supported his conclusions

with substantial evidence.

> **I.    Whether the ALJ properly accorded more weight to non-examining state physicians than to Dr. Brad Ginevan, a treating physician, and Linda Livingston, a treating nurse practitioner.**

Generally, the opinion of an examining physician is entitled to more weight than the opinion of a non-examining physician. *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985). However, in evaluating physician's opinions, "the [ALJ] may reject any medical opinion," including that of a treating and consulting physician, "if the evidence supports such a contrary finding." *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). If the evidence supports such a contrary finding, the ALJ must articulate specific reasons for rejecting the treating or consulting physician's opinion. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). Lastly, an ALJ may rely on a non-examining physician's report so long as the report does not contradict information in examining physician's reports. *See Randolph v. Astrue*, 291 Fed. Appx. 979, 982.

The ALJ accorded little weight to Dr. Ginevan and Livingston's opinions, a treating physician and nurse practitioner, and gave greater weight to the non-examining state agency physicians. To support his decision, the ALJ stated that Dr. Ginevan and Livingston's opinions were inconsistent with the objective findings in the record. Like all reports in the record, Dr. Ginevan's treatment records show no physical abnormalities in the claimant. However, in a letter addressed "to whom it may concern" Dr. Ginevan stated that the claimant could not maintain gainful employment. Additionally, Livingston's questionnaire stated that all testing results for the claimant were negative; yet, she marked limitations in the claimant's working capacity that reflect an inability to maintain gainful employment, thus reflecting inconsistencies. Therefore, the ALJ cited specific reasons for rejecting Dr. Ginevan and Livingston's opinions that were

supported by substantial evidence.

Moreover, nurse practitioners are not an "acceptable medical source" under the regulations. 20 C.F.R. §§ 404.1513(a)(1)-(a)(5). Only acceptable medical sources can establish medically determinable impairments or proffer medical opinions. 20 C.F.R. §§ 404.1513(a), 404.1527(a)(2). Livingston, as a nurse practitioner, cannot proffer a medical opinion nor can she establish medically determinable impairments. As such, the ALJ had additional grounds for giving less weight to Livingston's opinion.

Also, an ALJ may rely on a non-examining physician's report so long as the report does not contradict information in examining physician's reports. *See Randolph v. Astrue*, 291 Fed. Appx. 979, 982. Here, the non-examining state agency physicians determined that no objective medical evidence existed to support a finding of disability in the claimant. Nothing in the record contradicts this finding. To the contrary, both Dr. Ginevan and Livingston's records and reports acknowledged that the claimant had no physical abnormalities or positive test results. While the claimant's subjective claims of pain indicated a severity of impairment sufficient for finding the claimant disabled, the ALJ properly discredited those claims. Accordingly, the ALJ could rely upon the state agency physician's opinions. Furthermore, the ALJ did not rely solely on the state agency physician's opinions. For each conclusion regarding her RFC findings, the ALJ cited the claimant's testimony and activities for support. Thus, the ALJ committed no reversible error in weighing medical opinion evidence.

    **II.    Whether the ALJ properly applied the three-part pain standard.**

In evaluating pain and other subjective complaints, the Commissioner must consider whether the claimant demonstrated an underlying medical condition, and *either* "(1) objective

medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1225-56 (11th Cir. 2002); 20 C.F.R. § 404.1529.

The ALJ determined that the claimant had an underlying medical condition that could reasonably be expected to cause the alleged symptoms. However, the ALJ did not find any objective medical evidence to support the claimant's allegations regarding the severity of his pain and, thus, did not find the claimant's subjective pain complaints credible. To support this conclusion, the ALJ cited Dr. Cuccia's records. These records indicate that the X-rays and bone scans of the claimant show no abnormalities. Additionally, the ALJ noted that Livingston stated that all objective testing had been normal. The ALJ found that the record contained no objective medical evidence to substantiate the alleged severity of the claimant's pain. Therefore, the ALJ had to make a credibility determination regarding the subjective pain testimony of the claimant. As "credibility determinations are the province of the ALJ," this court finds no error in the ALJ's application of the three part pain standard. *See Moore v. Barnhart*, 405 F.3d 1208, 1212.

**III.    Whether the ALJ properly incorporated the PRTF's mode of analysis into his decision.**

When evaluating mental impairments, an ALJ must use the special technique dictated by the Psychiatric Review Technique Form (PRTF). 20 C.F.R. § 404.1520a(a). This technique requires evaluating four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3-4). When faced with a claim of mental impairment, an ALJ must complete and

append a PRTF to his decision or "incorporate its mode of analysis into his findings and conclusions. Failure to do so requires remand." *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005); *see also* 20 C.F.R. § 404.1520a(e)(2).

The ALJ did not complete and append a PRTF to his decision; however, he did incorporate its mode of analysis into his findings and conclusion. In determining that the claimant did not have an impairment or combination of impairments that met the Listings, the ALJ analyzed the claimant's functionality in the four areas described above. The ALJ determined that the claimant had mild limitations in activities of daily living; moderate limitations in social functioning; moderate limitations with regard to concentration, persistence, or pace; and no episodes of decompensation. To support his conclusions, the ALJ cited to the 2008 and 2009 treatment records from Riverbend Center for Mental Health that indicate that the claimant's GAF increased from fifty-five to sixty-five over a six month period and then remained level at sixty-five. Additionally, the ALJ noted the consistency between the Riverbend records and non-examining state physician's assessment.

In sum, the ALJ applied correct legal standards and supported his conclusions regarding the claimant's mental impairments with substantial evidence.

## VII. CONCLUSION

For the reasons as stated, this court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be AFFIRMED.

A separate order will be entered in accordance with this Memorandum Opinion.

DONE and ORDERED this 19th day of June, 2012.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE